UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES ANTHONY ADAMS,

                              Plaintiff,

vs.                                                           21-CV-6298 CJS-CDH

DEPUTY CORPORAL WHITEHAIR,                    DECISION and ORDER

                              Defendant.
_____

## INTRODUCTION

James Anthony Adams ("Adams" or "Plaintiff"), proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983), alleging that when he was confined at the Monroe County Jail in Rochester, New York ("the Jail"), defendant Corporal Philip Whitehair ("Whitehair" or "Defendant") subjected him to excessive force in violation of the Eighth Amendment to the U.S. Constitution.  Now before the Court is Defendant's motion for summary judgment, ECF No. 35.  For the reasons discussed below, the motion is granted, and the action is dismissed.

## BACKGROUND

Unless otherwise noted, the following are the undisputed facts of the case, viewed in the light most favorable to Plaintiff.  At all relevant times, Plaintiff was a "convicted and sentenced state prisoner" who was confined at the Jail, apparently while waiting to be transferred to a state prison facility.[1]  On August 12, 2020, at approximately 9:45 p.m.,

_____

[1] *See*, Amended Complaint, ECF No. 8 at p. 5.  Plaintiff is presently confined at Sing Sing Correctional Facility.

Plaintiff was locked into his one-man jail cell, reclining on his bunk, on which there were mattresses.[2] Bunks were supposed to have only a single mattress, but Plaintiff's already had two when he was assigned to the cell.[3] It is undisputed that as Plaintiff was reclining in his cell, deputy Corporal Whitehair approached and, from outside the cell, demanded that Plaintiff relinquish one of the mattresses. However, the parties dispute what happened next.

Whitehair contends that after ordering Plaintiff to give him the extra mattress, he waited approximately forty seconds for Plaintiff to comply, and then entered the cell. Whitehair contends that when he entered the cell, Plaintiff stood up, clenched his fists, and took an aggressive stance, whereupon Whitehair "utilized Subject Management Resistance Techniques to secure Plaintiff," which resulted in Plaintiff sustaining "head contusion & facial lacerations."[4] Whitehair later completed a Subject Management Resistance Report, in which he described the incident as follows:

> I ordered inmate Adams to give me his extra mattress. Inmate Adams stood up from his bed, pulled up his shorts, clenched his fists and took an aggressive stance towards me. I directed one straight punch to the facial area of inmate Adams (Hand Strike). I placed both of my hands on inmate Adams' chest and attempted to stabilize him against the cell wall (Wall Stabilization). Inmate Adams grabbed my uniform and attempted to push past me. I directed another straight punch to the facial area with my right hand (Hand Strike). I took hold of Adams' right arms with both hands and directed him onto his bunk (Takedown). I placed my left shin across his lower back to stabilize Adams against the bunk (Ground Stabilization) while I called a "Code One Staff Involved" via my two-way radio. I ordered inmate Adams to stop resisting and place his hands behind his back to which he

---

[2] See, Pl. Deposition, ECF No. 42 at pp 49-51.

[3] ECF No. 42 at pp. 51-61.

[4] ECF No. 35-18 at ¶ 12, ECF No. 35-5 at p. 2.

refused (Verbal Commands).  Inmate Adams attempted to get up from the bed and I utilized a straight punch with my right hand to his facial area (Hand Strike).  I took a hold of his right arm with both hands and placed it behind his back.  I ordered inmate Adams to place his left hand behind his back to be handcuffed and he refused (Verbal Command).  I applied a writs lock to Adams' right wrist and ordered him to place his left hand behind his back. (Joint Lock/Verbal Command).  He complied and I applied handcuffs.

ECF No. 35-5 at p. 3.

Plaintiff, however, disputes that version of events, and maintains that before he could even respond to Whitehair's demand, the officer entered his cell and began punching him. *See, e.g.*, Amended Complaint, ECF No. 8 at p. 4 ("Corporal Whitehair came inside of my cell and started punching me multiple times [in] my face then Corporal Whitehair slammed me on the bed and continued to punch me while I was screaming for help.  Corporal Whitehair continued punching me [in] the back of my head while I was on the bed in my cell face down screaming for help.  Corporal Whitehair didn't stop punching me until other deputies came to assist him."); *see also*, Pl. Dep., ECF No. 42 at pp. 51-53, 55 ("Q. You didn't tell the deputy that talked to you the next day that you popped up out of your bunk?  A. No, ma'am.  I never got a chance to get up and give him the extra mattress.  I never got a chance to get up, stand on my feet and give him the extra mattress.  He came in the cell.").

Plaintiff contends that he sustained injuries from the assault, including a cut under his right eye, a "busted lip," a "busted nose," back pain, head pain, chest pain, blurred vision, facial swelling, and emotional trauma.[5]  Defendant admits, for purposes of this motion, that Plaintiff's injuries consisted of "contusion to back of head (size of half dollar),"

---

[5] ECF No. 42 at p. 58.

"contusion to right eyebrow area," "superficial laceration to the right of the right eye," and injury to bottom lip. ECF No. 35-19 at p. 8.

On April 2, 2021, Plaintiff, who, by that time, was confined at Attica Correctional Facility, commenced this action, using a form complaint designed for prison inmates asserting Section 1983 claims. When asked, in the form complaint, whether he had filed any grievance concerning the alleged assault by Whitehair, Plaintiff answered in the affirmative, but added, "I never received no answer back." ECF No. 1 at p. 3.

On July 22, 2021, Plaintiff filed an Amended Complaint, ECF No. 8, using a different version of the form Section 1983 complaint. When asked, on the form, whether the jail where his claim arose had "a grievance procedure," Plaintiff checked a box indicating "Do Not Know." ECF No. 8 at p. 7. When further asked whether the Jail's grievance procedure "cover[ed] some or all of [his] claims," Plaintiff checked a box indicating "no," but added, "I wrote a grievance but never got no response then I sent a [illegible] complaint to Albany." *Id.* When later asked to describe what he had claimed in his grievance, Plaintiff wrote: "That I was assaulted and beat[en] by Corporal Whitehair, Deputy." *Id.* at p. 8. Finally, when asked what steps, if any, he had taken to appeal his grievance, Plaintiff wrote: "I never appeal cause I didn't get no response back. I just kept writing grievances." *Id.*

On October 28, 2021, Defendant filed an answer to the Amended Complaint, ECF No. 14, which, in pertinent part, denies the aforementioned allegations in the Amended Complaint, in which Plaintiff claims he filed grievances. The Amended Answer does not, however, include an affirmative defense based on a failure to exhaust administrative remedies.

On December 6, 2021, the Honorable Marian W. Payson, United States Magistrate Judge, issued a Scheduling Order in this action, ECF No. 22, which, among other things, ordered that any motions to amend pleadings be filed by February 15, 2022.

The parties subsequently engaged in fact discovery, and Magistrate Judge Payson extended the deadlines, for the completion of discovery and the filing of dispositive motions, several times.    However, Judge Payson never extended the deadline for amending pleadings.

On December 5, 2022, Defendant filed the subject motion for summary judgment, ECF No. 35.   The motion contends, first, that the action must be dismissed due to Plaintiff's failure to exhaust his administrative remedies before commencing this action, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See, id.* ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (West 2025).

Since Defendant's Answer does not assert an affirmative defense of failure to exhaust administrative remedies, Defendant asks the Court for permission to amend his pleading to include such defense, and/or for the Court to "deem his answer amended for purposes of the Court's consideration of the present motion for summary judgment." ECF No. 35-19.

In support of this affirmative defense, Defendant submits an affidavit from the Grievance Coordinator at the Monroe County Jail, Monroe County Sheriff's Sergeant Carolyn Derousie ("Derousie"), indicating that at the relevant time, the Jail had an

available grievance procedure, which Plaintiff did not utilize.  In that regard, Derousie indicates that all Jail inmates received a copy of the Jail's Inmate Handbook, which included a section detailing the grievance process, entitled, "How You Must Resolve Complaints and Grievances." ECF No. 35-13 at ¶ ¶ 7-9.  Defendant submitted the relevant Inmate Handbook as Exhibit 9 to his Summary Judgment Motion. ECF No. 35-9.

The relevant grievance procedure is set forth at pages 15-16 of the Inmate Handbook. ECF No. 35-9 at pp. 16-17.  Derousie's affirmation summarizes the procedure, stating, in pertinent part, as follows:

> 10. First, the Inmate must complete the complaint process, which involves: a. Trying to resolve it with his housing supervisor or the duty sergeant on rounds. b. If unsatisfied, the Inmate may request an Internal Communication Form.  c. The Inmate shall write a brief description to the Superintendent about his problem.  d. The Superintendent or his designee will review the complaint and determine whether his complaint has merit and if a remedy is warranted.

> 11. If dissatisfied with the decision received through the complaint process, the Inmate may forward his complaint through the grievance process.  The grievance process at the Monroe County Jail involves: a. The Inmate may request a grievance form by notifying his housing area supervisor. b. The Inmate's housing officer then contacts a Grievance Officer.  c. The grievance must be filed within five (5) days of the date of the act or occurrence giving rise to his complaint. d. The grievance form must be submitted to the Jail Grievance Coordinator through outgoing mail for the Inmate's housing area. e. The Grievance Officer will answer the grievance within five (5) business days of receipt of the form. f. If unsatisfied with the decision, the inmate may appeal it to the Superintendent. g. The appeal must be filed within two (2) business days of the Inmate's receipt of the Grievance Coordinator's decision. h. The Superintendent will review the appeal and provide the inmate with a written determination within five (5) business days of his receipt of the form. i. If the Superintendent finds merit to the inmate's appeal, he will direct written appropriate solutions for the inmate. j. If the Inmate is not satisfied with the Superintendent's decision, he may appeal it to the NYS Commission of Correction ("CPCRC") in Albany. k. The Inmate's appeal must be prepared within three (3) business

days of his receipt of the Superintendent's decision. l. The CPCRC will issue a written determination within forty-five (45) business days of its receipt, copies of which are sent to the Inmate, Grievance Coordinator, and Superintendent.

ECF No. 35-13 at ¶ ¶ 10-11.

Derousie indicates, however, that there is no record of Plaintiff ever having filed a grievance concerning the alleged assault by Corporal Whitehair.  Defendant maintains that he is therefore entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies before commencing this action, as required by 42 U.S.C. § 1997e(a).

Defendant acknowledges that Plaintiff, in his pleadings, claims to have filed multiple grievances concerning the alleged assault by Whitehair, but contends that such a conclusory allegation, unsupported by any documentary evidence, is insufficient to raise a triable issue of fact concerning exhaustion.

Alternatively, Defendant maintains that Plaintiff's Eighth Amendment claim must be dismissed on the merits, purportedly since Plaintiff's injuries were *de minimis*, and Whitehair's use of force was, in any event, "a good-faith effort to maintain discipline." ECF No. 35-19 at p. 13.  In support of this argument, Defendant contends that the entire confrontation lasted only fourteen seconds, and that Plaintiff's injuries were "minor and superficial." *Id.* at p. 15.

Finally, Defendant asserts that he is entitled to qualified immunity, purportedly since "[i]t was objectively reasonable for [him] to believe that force was lawful because he was confronted with an intransigent inmate and he acted for the purpose of maintaining discipline." ECF No. 35-19 at p. 20.

Plaintiff, after the Court granted him several extensions of time, filed a response to Defendant's motion, ECF No. 42, consisting of an unsworn 14-page memorandum of law, and exhibits, including the transcript of his sworn deposition, which contains no testimony relevant to the exhaustion issue. Regarding the circumstances of the use of force, Plaintiff denies Whitehair's version of events. That is, he specifically denies that he disobeyed Whitehair's command to relinquish one of his mattresses; that he stood up, clenched his fists, and took a defensive stance; or that he said or did anything to provoke Whitehair's violence.

Plaintiff similarly denies that he failed to exhaust his administrative remedies. In particular, Plaintiff devotes a single paragraph in his unsworn memorandum of law to this topic, stating:

> Plaintiff Adams states that he did file multiple grievances, facts, *see Plaintiff's original grievance form.* Plaintiff Adams also states that all incarcerated individuals house[d] in 3WH filed grievances pertaining to this matter the grievance on Corporal Whitehair were misplaced or destroyed. Plaintiff Adams denies Sergeant Derousie['s] declaration. Plaintiff Adams states that he sent his complaint to 39 W. Main St, Roch NY 14614, and also sent his complaint to Albany 80 Swan Street pertaining to this incident.

ECF No. 42 at p. 8 (emphasis added).

Regarding the "original grievance form" that Adams claims to have filed, he has attached a form "Inmate Grievance Complaint," Form 2131E (9/12), from the New York State Department of Corrections and Community Supervision ("DOCCS"). *See*, ECF No. 42-1 at pp. 69-70, 77. The form, purporting to bear the date "8-14-2020," states in pertinent part:

> I was assaulted and beat[en] by Co[rporal] Whitehair Co[rporal] Whitehair come inside of my cell while I was in 3 West High 20 cell laying down in my bed and started punching me repeatedly [illegible] my face while I was

> screaming for help.  This was a intentional malicious act by Corp[oral]
> Whitehair that happen on August 12, 2020.

ECF No. 42 at p. 69.  The document is otherwise blank, bearing no indication that it was

actually filed with, or submitted to, any grievance body.

Defendant filed a reply (ECF No. 45) that essentially reiterates the arguments in

his initial memorandum of law.  Additionally, concerning Plaintiff's opposition papers, the

reply contends, *inter alia*, that Plaintiff's response fails to raise a triable issue of fact as to

whether he exhausted his administrative remedies before commencing this action.  In

particular, Defendant asserts that neither Plaintiff's bald assertion that he filed grievances,

nor the copy of the grievance that he claims to have submitted, which bears no indication

of ever having been filed, are sufficient to raise a triable issue of fact.

The Court has carefully considered the parties' submissions.  In that regard, the

Court noted, when it first began reviewing the parties' papers several months ago, that

Defendant's Memorandum of Law, ECF No. 35-19, indicates, in a footnote, that he served

a copy of the required "Pro Se Notice pursuant to Fed. R. Civ. P. Rule 56" ("*Irby* notice")

on Plaintiff, along with the summary judgment motion. ECF No. 35-19 at p. 6, n. 3.

However, upon scanning the docket, the Court found no other indication of such service,

such as a reference to an *Irby* notice in an affidavit of service.  Consequently, in an

abundance of caution, on January 22, 2025, the Court issued an order, ECF No. 49,

directing Defendant to re-serve the *Irby* notice on Plaintiff, and granting Plaintiff additional

time to submit any supplemental papers opposing the summary judgment motion.  In that

regard, the Court's order specifically indicated that Plaintiff could submit an affidavit.

Thereafter, Defendant re-served the *Irby* notice, ECF No. 50, but Plaintiff submitted

nothing further in opposition to the summary judgment motion.

GENERAL PRINCIPLES APPLICABLE TO RULE 56 MOTIONS

The parties have moved for summary judgment, pursuant to Fed. R. Civ. P. 56, which may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

Additionally, the movant must demonstrate, and not merely assert, that he is entitled to judgment under the relevant principles of law. *See, Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368, 373 (W.D.N.Y. 2014) ("While the absence of any genuine dispute of material fact is a precondition for summary judgment, the crux of a summary judgment analysis is whether the movant has established entitlement to judgment as a matter of law.") (quoting 11–56 MOORE'S FEDERAL PRACTICE—CIVIL § 56.20 (Matthew Bender 2014)), adhered to on reconsideration, No. 11-CV-6119 CJS, 2016 WL 981858 (W.D.N.Y. Mar. 15, 2016); *see also, Darley v. U.S.*, No. 22-CV-00714 (PMH), 2025 WL 1159518, at *3 (S.D.N.Y. Apr. 21, 2025) ("Should there be no genuine issue of

material fact, the movant must also establish its entitlement to judgment as a matter of law.  Simply put, the movant must separately establish that the law favors the judgment sought.") (citations omitted).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[6] To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

DISCUSSION

Defendant's Motion for Summary Judgment

Defendant's motion (ECF No. 35) purports to seek summary judgment on three separate grounds: First, that Plaintiff failed to exhaust his administrative remedies before commencing this action, as required by 42 U.S.C. § 1997e(a); second, that Plaintiff's Eighth Amendment claim lacks merit, since Plaintiff cannot demonstrate either the objective or subjective elements of such a claim; and, third, that even if Plaintiff could

---

[6] "The substantive law governing the case will identify those facts which are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Heard v. City of New York*, 319 F.Supp.3d 687, 692 (S.D.N.Y. 2018).

establish an Eighth Amendment violation, Defendant would be entitled to qualified immunity. However, since the Court finds that Defendant is entitled to summary judgment on the first of these grounds, it does not reach the other two.

*The Court May Properly Consider Defendant's Exhaustion Argument*

As a preliminary matter, the Court grant's Defendant's unopposed request to raise the affirmative defense of failure to exhaust administrative remedies on summary judgment, with or without amendment of his Answer.

In this regard, it is, of course, "well-established that a district court should normally permit amendment [of pleadings] absent futility, undue delay, bad faith or dilatory motive, or undue prejudice." *Masotto v. United States*, 205 F.3d 1323 (2d Cir. 2000) (citations omitted). Although, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)

Here, the Court has considered that the deadline for amending pleadings expired approximately ten months before Defendant filed his motion, and that he has not attempted to show good cause for failing to amend by that deadline. Accordingly, the Court could, in its discretion, easily deny the application to amend.

On the other hand, it is not clear that Second Circuit caselaw *requires* the Court to deny Defendant's post-scheduling-order-deadline request to amend, based solely on the absence of good cause. *See, Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014) ("[I]n appropriate circumstances, a district court has discretion to grant a motion to amend even where the moving party has not shown

12

diligence in complying with a deadline for amendments in a Rule 16 scheduling order.")
(collecting cases); *accord, Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No.
21CV7740JPCRWL, 2023 WL 2919554, at *13 (S.D.N.Y. Mar. 23, 2023) (collecting
cases), *report and recommendation adopted*, No. 21CIV7740JPCRWL, 2023 WL
6066168 (S.D.N.Y. Sept. 18, 2023); *Anzovino v. Wingate of Dutchess, Inc.*, No. 21 CIV.
7625 (AEK), 2022 WL 17076750, at *2 (S.D.N.Y. Nov. 18, 2022) ("Ultimately, the decision
as to whether to let Rule 16(b) stand as a bar to amendment lies within the court's
discretion.") (citation and internal quotation marks omitted); *but see, Woodworth v. Erie
Ins. Co.*, No. 05-CV-6344 CJS, 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009) ("The
Court does not understand [the relevant] language from *Kassner* to mean that where the
moving party has not been diligent, a court many nonetheless grant the motion if it would
not prejudice the non-moving party.").

Additionally, even without an express amendment, a court may consider an
unpleaded affirmative defense at the summary judgment stage, particulary where the
opposing party had notice of the issue and has not shown that he would be prejudiced
by the court's consideration of the defense:

> [W]e find no merit in Brand's contention that Principal Life should be
> estopped from relying on the Criminal Activity Exclusion. He asserts that it
> invoked the Criminal Activity Exclusion for the first time in its motion for
> summary judgment. The record shows, however, that Principal Life
> referenced the Policy's four exclusions generally in its Answer and
> Affirmative Defenses, and, given the nature of the other exclusions, this was
> likely sufficient to put Brand on reasonable notice that Principal Life would
> later rely on the Criminal Activity Exclusion, at least so as to undercut his
> estoppel argument.
>
> But even if Principal Life's Answer and Affirmative Defenses left any doubt
> as to the precise defenses to coverage that it asserted, at the summary
> judgment stage a district court may entertain unpleaded defenses in the

absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility of the defense, or undue delay of the proceedings. *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004). Brand has demonstrated none of these factors. Crucially, Brand has not shown any prejudice at all: he had ample opportunity to address Principal Life's Criminal Activity Exclusion argument in his opposition to its motion for summary judgment. In short, Brand had a "full and fair opportunit[y] to respond," even assuming that Principal Life pleaded its affirmative defense in "arguably conclusory terms." *EMA Fin., LLC v. Chancis*, 80 F.4th 395, 404 (2d Cir. 2023). The district court therefore properly entertained Principal Life's argument that the Criminal Activity Exclusion barred Brand's claim for benefits.

*Principal Life Ins. Co. v. Brand*, No. 21-2716, 2023 WL 8270721, at *3 (2d Cir. Nov. 30, 2023); *see also, Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365, 373 (2d Cir. 2023) ("[R]egardless of what BNY Mellon pleaded, the district court was permitted to consider the affirmative defense of issue preclusion – even issue preclusion of champerty-based prudential standing – in accordance with the 'strong public policy in economizing the use of judicial resources by avoiding relitigation.' *Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir. 2003) (internal quotation marks omitted) (holding that a court may, in its discretion, permit an issue-preclusion defense to be raised for the first time on summary judgment)") (other citation omitted).

In the instant case, Plaintiff had reasonable notice that exhaustion of administrative remedies was at issue, since the form Complaint that he used explained the requirement of 42 U.S.C. § 1997e(a), ECF No. 1, and since Defendant's Answer expressly denied that Plaintiff had filed a grievance.[7]  Additionally, Plaintiff has not

---

[7]Even as a *pro se* prisoner litigant, Plaintiff was necessarily aware of this issue, since he filed out two different Section 1983 form complaints which referenced 42 U.S.C. § 1997e(a) and asked him numerous questions about any grievances that he might have filed concerning the subject of the federal court action. *See, e.g.*, Amended Complaint, ECF NO. 8 at p. 6 ("The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison

attempted to show that he would be prejudiced by the Court's consideration of the defense.  Indeed, Plaintiff's response does not object to, or even mention, Defendant's request to raise the affirmative defense.  Finally, Plaintiff had a full and fair opportunity to respond to Defendant's exhaustion argument.  Consequently, the Court sees no obstacle to its consideration of Defendant's PLRA exhaustion defense.

*Defendant is Entitled to Summary Judgment Under 42 U.S.C. § 1997e(a)*

Defendant contends that he is entitled to summary judgment under the PLRA's exhaustion requirement, 42 U.S.C. § 1997e(a), since Plaintiff failed to exhaust the administrative remedies that were available to him at the Monroe County Jail.  In that regard, the applicable law is clear:

> The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust, a prisoner must "properly" comply "with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks and italics omitted).

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-1375, 2024 WL 442454, at *2 (2d Cir. Feb. 6, 2024) ("*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends*").

In the instant case, this means that since Plaintiff's claim arose from an incident at the Monroe County Jail, he was required to properly exhaust his administrative remedies under the Monroe County Jail grievance procedures existing at the relevant time. *See,*

---

conditions under Section 1983 of this title, or any other Federal Law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.").

*Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.  [Consequently, the steps that are necessary] to comply with the grievance procedures will vary from system to system and claim to claim, because it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.") (citations and internal quotation marks omitted).

"The failure to exhaust in accordance with § 1997e(a) is an affirmative defense under the PLRA." *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022) (citation and internal quotation marks omitted).  "[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute." *Edwards v. Destefano*, No. 23-7515, 2025 WL 1068317, at *2 (2d Cir. Apr. 9, 2025) (quoting *Williams v. Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016), citations and internal quotation marks omitted).  "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Here, Defendant has met his initial burden, on summary judgment, of demonstrating that Plaintiff failed to exhaust the applicable grievance procedure that was in place at the Jail.  In particular, Defendant has submitted evidence, including the pertinent Monroe County Jail Inmate Handbook, adopted by Sheriff Todd K. Baxter in Jail

Bureau General Order No. 023-19, pursuant to 9 N.Y.C.R.R. Part 7002.9,[8] containing the relevant grievance procedure, which, by its terms, was applicable to Plaintiff's complaint,[9] as well as the sworn statement of Sergeant Derousie, indicating that the inmate handbook was provided to every jail inmate, and that the jail has no record of Plaintiff ever filing a grievance concerning the alleged assault by Defendant on August 12, 2020.

In response to Defendant's showing on this point, Plaintiff does not dispute that he received the inmate handbook, that the grievance process described therein actually existed at the relevant time, or that his complaint about Defendant's alleged assault fell within the scope of that grievance process. Instead, he simply claims that he "wrote grievances," but received no response. In this regard, he seems to imply that his grievances were lost or destroyed, though he does not claim that Defendant or any other specific individual or policy interfered with his attempt to exhaust his administrative remedies.

Liberally construing Plaintiff's response to raise the strongest argument that it suggests, Plaintiff is contending that the grievance process at the Monroe County Jail was not "available" to him, since his grievances were not properly handled, but, rather, were lost, destroyed, or ignored. The legal principles applicable to such a contention are clear:

---

[8] *See, id.* ("(a) Each local correctional facility shall prepare and distribute to all prisoners, upon admission, a written copy of facility rules and information. Such rules and information shall include, but is not limited to, the following: . . . (15) grievance procedures;") (West 2025).

[9] According to the Inmate Handbook, the grievance procedures pertained to any complaint about "facility policies, procedures, rules, practices, programs, *or the action or inaction of any person within the facility*," (emphasis added). The handbook indicated that only the following could *not* be grieved: "dispositions or sanctions resulting from a disciplinary hearing," "administrative segregation housing decision," "issues that are outside the authority of the chief administrative officer," and "complaints pertaining to an inmate other than yourself." ECF No. 35-9 at p. 17.

A grievance process is available if an incarcerated person can use it to obtain the relief he or she seeks. *See Ross v. Blake*, 578 U.S. 632, 643, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). "We have held that the test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (alteration adopted) (internal quotation marks and citations omitted). The Supreme Court has recognized three non-exclusive circumstances in which a grievance process may not be available for purposes of the PLRA and a court may excuse a failure to exhaust: (1) when the grievance process is a "simple dead end" because officers are "unable or consistently unwilling to provide" relief; (2) when the administrative scheme is "so opaque that it [is], practically speaking, incapable of use"; and (3) when "prison administrators thwart inmates" seeking relief by means of "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44, 136 S.Ct. 1850. "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alteration adopted) (internal quotation marks and citations omitted). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact."

*Moco v. Janik*, No. 22-307-PR, 2023 WL 6632952, at *2 (2d Cir. Oct. 12, 2023), *cert. denied*, 145 S. Ct. 597, 220 L. Ed. 2d 233 (2024); *see also, Saeli v. Chautauqua Cnty., NY*, 36 F.4th 445, 453 (2d Cir. 2022) ("If the defendant has met its burden of establishing the existence and applicability of the grievance policy, the plaintiff bears the burden of establishing *de facto* unavailability.").

However, to raise a triable issue of fact as to whether grievance procedures were available, the plaintiff must offer more than speculation or conclusory assertions. *See, e.g., Dean v. Sheehan*, No. 9:22-CV-00746 (BKS/ML), 2025 WL 1811183, at *17 (N.D.N.Y. July 1, 2025) ("Courts within the Second Circuit have continuously held that

mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.") (collecting cases); *see also, Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) ("[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.").

Plaintiff's responsive papers devote little attention to the exhaustion issue, and point to no evidentiary proof in admissible form that he ever filed a grievance, let alone that he properly exhausted the Jail's grievance process.   In this regard, Plaintiff's allegations about having "written grievances" are contained in his unsworn complaint and his unsworn memorandum of law.[10]  He did not submit any sworn statement on that issue, despite the Court's invitation for him to do so, and despite having been served, at least once and probably twice, with an *Irby* notice.

Beyond that, in addition to being unsworn, Plaintiff's allegations are conclusory and largely devoid of supporting facts, such as *when* he filed the grievance, and *with whom*. For example, while Plaintiff asserts that he wrote multiple grievances, he never indicates the dates on which he submitted them to anyone.   Similarly, Plaintiff does not claim that he submitted his complaints according to the procedures contained in the Jail Handbook. Rather, he merely states that he mailed his grievances, at unspecified times, to unspecified persons at "39 W. Main St, Roch NY 14614" and "Albany 80 Swan Street."

---

[10] The Amended Complaint has Rule 11 certification, but such a certification does not make a pleading sworn to under penalty of perjury. *See, Jaye v. United States*, No. 2:22-CV-376-WKW, 2022 WL 2317226, at *1 (M.D. Ala. June 28, 2022) ("Ms. Jaye's Rule 11 certification is not a substitute for an affidavit or for a declaration under penalty of perjury under 28 U.S.C. § 1746."); *see also, Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) ("Rule 11 expressly provides that "a pleading need not be verified or accompanied by an affidavit," and instead treats the signature of an attorney or party as a certification that the claim is legally sufficient and likely factually supported. Fed. R. Civ. P. 11(a), (b) (emphasis added).").

Moreover, to the extent Plaintiff has asserted supporting facts, they actually undermine, rather than support, his claim. For example, Plaintiff submits what purports to be a copy of the actual grievance that he filed. *See*, ECF No. 42 at pp. 69-70. However, the form that he submitted is a DOCCS prison grievance form, not a jail grievance form. In this regard, the New York State Commission of Correction promulgates its own grievance forms for use in county jails, which are different from the grievance forms used by DOCCS in state prison facilities. *See, e.g.*, the Commission of Correction's website, https://scoc.ny.gov/manuals-and-forms , "Inmate Grievance Form."

Consequently, on its face, the exhibit does not appear to be what Plaintiff claims it is, namely, a grievance that he filed while at the Monroe County Jail. Rather, since it seems unlikely that Plaintiff obtained a DOCCS grievance form while incarcerated at the Jail, the reasonable inference is that Plaintiff completed the form at a later time, after leaving the Jail and entering a DOCCS facility. According to DOCCS's website, Plaintiff was received into DOCCS custody on his current term of incarceration on September 29, 2020, which was 48 days after the alleged assault by Whitehair. Plaintiff presumably obtained the DOCCS grievance form on or after that date, meaning that, if he actually filed the grievance at all using that form, it would have been long past the 5-day deadline contained in the Monroe County Jail Handbook. *See*, Derousie Affidavit, ECF No. 35-13 at ¶ 11(c) ("The grievance must be filed within five (5) days of the date of the act or occurrence giving rise to his complaint.").

However, the alleged grievance bears no indication that it was ever actually filed with, or received by, any legitimate grievance body at any facility, let alone at the Jail and within the required time frame. *See, Saeli v. Chautauqua Cnty.*, NY, 36 F.4th 445, 454

(2d Cir. 2022) ("The informal grievance form standing alone cannot establish a genuine dispute of material fact as to whether Saeli submitted that form at all, much less in time to file a formal grievance by September 29, 2016. The form is dated "9/25/16 1430," *id.* at 735, but it includes information added by Saeli about the disciplinary hearing that occurred on September 26, 2016. The form therefore cannot possibly have been submitted to the Jail on the date given on the form, absent some further explanation that Saeli makes no attempt to offer. Moreover, the form bears no markings indicating that it was ever received by a Jail officer, much less received by any specific date."). [11]

Plaintiff also contends that every inmate housed with him in the "3 West High" cell block filed grievances on his behalf, which were lost or destroyed. *See*, ECF No. 42 at p. 8 ("Plaintiff Adams also states that all incarcerated individuals house[d] in 3WH filed grievances pertaining to this matter the grievance on Corporal Whitehair were misplaced or destroyed. "). However, this bald assertion, in addition to being conclusory if not patently implausible, fails to raise any triable issue of fact as to whether Plaintiff exhausted his administrative remedies or whether the grievance process was available, since the Jail Handbook clearly indicates that inmates cannot file grievances on behalf of other inmates. *See*, ECF No. 35-9 at p. 17 (Indicating that "complaints pertaining to an inmate other than yourself" cannot be grieved).

_____

[11] *See also, Calderon v. Nealon*, No. 9:09-CV-1001, 2011 WL 455120, at *4 (N.D.N.Y. Feb. 4, 2011) ("Plaintiff asserts that he filed a grievance regarding this incident on June 11, 2009, while he was still lodged at the Schenectady County Jail but never received a "result or disposition ." Compl. at 2. Indeed, attached to his complaint is a copy of a three-page handwritten "Grievance" that Calderon authored on June 10, 2009. Id. at 8–10. However, there are no markings, signatures, or stamps anywhere on this document to indicate that it was filed with or received by jail officials. *Id.* Moreover, this document does not appear to be an official inmate grievance form as was used in the facility at the time. See LaBrake Aff., ¶ 9 ("It is the policy of the jail to use both an inmate grievance form and an investigation report form as provided by the New York State Commission of Correction.").").

Furthermore, even assuming *arguendo* that Plaintiff wrote multiple grievances and mailed them to "39 W Main St, Roch" and "Albany 80 Swan St," respectively, as he claims, such actions do not amount to proper exhaustion under the Jail's Grievance Procedure. Plaintiff never claims, for example, that he followed the informal complaint process, by submitting an Internal Communication Form to the Jail Superintendent before filing a formal Grievance, as required by that Procedure. *See*, ECF No. 35-9 at p. 16. Nor does he claim that he requested one of the Jail's grievance forms from his "housing area supervisor," as required by the Grievance Policy. *Id.* Rather, as already discussed, Plaintiff claims to have utilized a different grievance form, promulgated by DOCCS. Nor does he claim to have submitted his grievance to the Jail Grievance Coordinator within five days of the alleged assault, as required by the Grievance Policy. *Id.* at 17. Additionally, Plaintiff expressly admits that he never filed any appeal relating to his alleged grievances. Instead, he indicates that he simply wrote more grievances. ECF No. 8 at p. 8 ("I never appeal[ed] cause I didn't get no respon[se] back. I just kept writing grievances.").

In sum, Plaintiff has not shown that he properly exhausted his administrative remedies according to the procedure set forth in the Jail Handbook. Indeed, Plaintiff has not shown that he followed those procedures *at all*, which is consistent with his statement, in his original complaint in this action, that he did not know whether the Jail had a grievance procedure. However, even assuming that Plaintiff's statement on that point were true, his ignorance in that regard would not help his case, since even assuming that he was subjectively unaware of the Jail's grievance procedures, due to, for example, his not having reviewed the Inmate Handbook, it would not create an issue of fact as to

whether the grievance process was available to him. *See, Vidro v. Erfe*, No. 3:18-CV-00567 (CSH), 2019 WL 4738896, at *8 (D. Conn. Sept. 26, 2019) (Noting that to prove unavailability, "a plaintiff must show more than mere unawareness of an existing grievance procedure; he must show that he was unaware because, for example, prison officials threatened him for use of the grievance system or affirmatively misrepresented the process.") (citations omitted).

Nor has Plaintiff otherwise raised a triable issue of fact as to whether the Jail's Grievance Policy was "available" to him. In that regard, his bald assertion, that he wrote grievances but never received a response, is insufficient to defeat Defendant's motion. *See, e.g., Engles v. Jones*, No. 6:13-CV-6461 EAW, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact.") (collecting cases). Consequently, the Court grants Defendant's motion, pursuant to 42 U.S.C. § 1997e(a).

## CONCLUSION

Defendant's Summary Judgment Motion (ECF No. 35) is granted, based on Plaintiff's failure to comply with 42 U.S.C. § 1997e(a). Dismissal is with prejudice, since it appears that any attempt by Plaintiff to now exhaust his administrative remedies would be untimely and futile.[12] The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3),

---

[12] *See, e.g., Allah v. Adams*, 573 F. Supp. 3d 904, 912, n. 3 (W.D.N.Y. 2021) ("Generally, a dismissal for failure to exhaust under the PLRA [is] without prejudice, particularly when the dismissal is based on a curable, procedural flaw. However, because Plaintiff has since been transferred from the Gowanda Correctional Facility where he alleges the "acts of retaliation occurred," and he can no longer cure his defect, the Court dismisses [his] claim with prejudice.") (citation and internal quotation marks omitted).

that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Any request to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk is directed to enter judgment for Defendant and close the action.

     SO ORDERED.

CHARLES J. SIRAGUSA
United States District Judge

DATED:  July 18, 2025
        Rochester, New York